YATES v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department.   September 26, 1905.)

1. RAILROADS—INJURIES TO ANIMALS—QUESTIONS FOR JURY.
     In an action against a railroad for injuries to a horse, caused by his
     foot being caught in the rail at a crossing, evidence *held* to present a
     question of fact for the jury on the issue of the occurrence of the accident.

2. APPEAL—HARMLESS ERROR—NONSUIT.
     Where the evidence presents a question for the jury, a judgment of
     nonsuit is technically erroneous and will be reversed, although the court
     would be justified in setting aside the verdict as against the weight of
     the evidence.

Appeal from Trial Term, Montgomery County.

Action by Abram G. Yates against the New York Central & Hudson
River Railroad Company.   From a judgment entered on a nonsuit, and
from an order denying a motion to set aside a direction dismissing the
complaint, plaintiff appeals.   Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER,
and HOUGHTON, JJ.

Louis S. Carpenter, for appellant.
John D. Wendell, for respondent.

HOUGHTON, J.   The complaint alleges negligence in the construc-
tion of a highway crossing over its tracks.   Instead of using plank on
the inside of its rail, the necessary gutter for the flanges of car wheels
was formed by a flange rail laid on the ties, with a perpendicular back
against which the planking was laid; the lower lip meeting the bottom
of the main rail.   At the crossing in question, and at the point where
the plaintiff testified the accident occurred, there was a joint in the main
rail, held together by the usual fish plates and bolts, the heads of which
were on the inside of the rail.   To avoid the heads of these bolts, the
lower lip of the flange rail was notched out for a space of three feet,
leaving, as the plaintiff testified, a hollow space about one inch wide
between the heads of the bolts of the fish plate.   The gutter rail was
about two inches deep, and the space between the inside of the main
rail and the outer flange of the gutter rail about three inches.   There
was proof that on some other crossings these spaces between the heads
of the fish-plate bolts, caused by the notching out of the flange rail to re-
ceive them, were filled with pieces of hard wood.   The plaintiff testi-
fied that his horse was shod with long, sharp toe and heel calks, and
that while driving him carefully across the defendant's tracks the toe
calk on one of the fore feet was caught in the space between the heads
of the fish-plate bolts, throwing him and wrenching his foot so as to
practically make him useless.   On the whole evidence the court sub-
mitted specific questions to the jury, all of which were answered in the

plaintiff's favor. A motion for a nonsuit had been reserved until the taking of such verdict, and upon its coming in the court granted the motion, and it is from the judgment entered thereon that the plaintiff appeals.

A model of the construction of the crossing, proved to be substantially correct, was produced on the trial, and is produced upon the argument, and, from an inspection of it, it would seem that the accident was quite extraordinary. The plaintiff testified, however, that the opening between the bolt heads was wider than that of the model, and that the calks on his horse's shoes were long and sharp, by reason of the icy condition of the roads, and that the accident did in fact happen. The situation is not so clear that it can be said as matter of law that the accident could not have occurred. This being so, a question of fact was presented for the jury, and the nonsuit could not properly be granted.

There was proof that this manner of construction of crossings was usual and of an improved type, and that it was not customary to fill the spaces between the bolt heads with wood, and that an ordinary shoe, calked in the ordinary way, could not get to the space to be caught as plaintiff testified it was, and, further, that the accident did not happen at the place on the rail where the alleged defect existed. The court would have been justified in setting aside the verdict of the jury as against the weight of evidence. This, however, would have given plaintiff a new trial, and an opportunity to develop further facts, if he were able. The nonsuit being technically wrong, we must reverse the judgment entered thereon and grant a new trial. As we are of the opinion that the verdict should have been set aside, we order a new trial, instead of restoring the verdict of the jury.

The judgment and order reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.